UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| ANGELO F. RONK, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:19-CV-187-JD |
| | ) | |
| ANDREW M. SAUL, Commissioner of Social Security | ) ) ) | |
| | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

Angelo F. Ronk applied for social security disability insurance benefits and supplemental security income, alleging that he is unable to work primarily due to his back pain, epilepsy, obesity, depression, posttraumatic stress disorder, panic disorder, and prostatic hypertrophy. Mr. Ronk was found to be not disabled in an April 2018 decision. Mr. Ronk filed this appeal, asking the Court to reverse the ALJ's decision and remand for further proceedings based on alleged errors with the residual functional capacity assessment. The Commissioner filed a response in opposition, and Mr. Ronk filed a reply. As explained below, the Court remands the Commissioner's decision.

**I.   Factual Background**

Until he stopped working, Mr. Ronk worked as a surveyor and a painter. Mr. Ronk suffers from degenerative disc disease of the lumbar spine; epilepsy; obesity; neurocognitive disorder; major depressive disorder; generalized anxiety disorder; posttraumatic stress disorder; benign prostatic hypertrophy and outflow obstruction; and panic disorder, all of which the ALJ found to be severe impairments. (R. 12). Mr. Ronk has a history of seizures and back pain for which he regularly received treatment and medication.

1

Mr. Ronk applied for benefits in 2015. The ALJ issued an unfavorable decision on April 24, 2018. In that decision, the ALJ made the following residual functional capacity:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). The claimant can never climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs; balance; stoop; kneel; crouch; and crawl. The claimant can have no exposure to moving mechanical parts or exposure to unprotected heights. The claimant cannot drive at work. The claimant must have a restroom on site. The claimant can complete simple, routine, repetitive tasks. The claimant has minimal reading/writing to the eighth grade level. The claimant can have no production rate pace and no quotas, but rather should rely more on end-of-day goals being satisfied. The claimant can have a low stress position, defined as not requiring the worker to cope with work related circumstances that could be dangerous to the workers or others. The claimant can have no interaction with the public.

(R. 15). Finding that Mr. Ronk could have performed other work in the economy, the ALJ found that he was not disabled. The Appeals Council declined review, and Mr. Ronk filed this action seeking judicial review of the Commissioner's decision.

## II.   Standard of Review

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

2

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III.    Standard for Disability

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S. C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;

3

    4.   Whether the claimant can still perform past relevant work; and

    5.   Whether the claimant can perform other work in the community.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**IV.**   **Discussion**

Mr. Ronk offers three argument in support of reversal. He argues that the ALJ failed to properly weigh a treating physician's opinion, that the ALJ erred in the RFC assessment, and that the ALJ erred in the subjective symptom analysis. The Court finds that the ALJ erred in weighing the treating neurologist's opinion and in analyzing subjective symptoms and therefore remands the Commissioner's decision.

4

### A. Treating Physician

The opinion of a treating physician on the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in [the] case record." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011); 20 C.F.R. § 404.1527(c)(2). "An ALJ must offer good reasons for discounting the opinion of a treating physician." *Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016) (citing *Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014)). If the ALJ does not give the treating physician's opinion controlling weight, the ALJ applies the factors set forth in 20 C.F.R. § 404.1527(c)(2)-(6) to determine the weight to give the opinion. *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014).

Dr. Daksha Vyas was Mr. Ronk's treating neurologist and saw him every three months. (R. 789). Dr. Vyas provided two separate medical opinions in December 2017. (R. 788-792). In the opinions, Dr. Vyas opined that Mr. Ronk can sit, stand, or walk for less than 15 minutes at a time. He opined that Mr. Ronk would need to recline frequently, and would be able to sit for less than two hours in an eight-hour work day, and would be able to stand/walk for less than a half hour in an eight-hour work day. (R. 788). Dr. Vyas noted that Mr. Ronk's medications caused drowsiness and emotional lability. (R. 789). Dr. Vyas also opined that Mr. Ronk would need a job that permitted shifting positions at will and would need to take unscheduled breaks during a work day due to pain, medication side effects, and seizures. (R. 789-90). Dr. Vyas further opined that due to sensory numbness and muscle weakness, Mr. Ronk would be limited in the use of his hands/fingers/and arms during the work day. (R. 790). Finally, Dr. Vyas opined that Mr. Ronk would be incapable of even "low stress" work due to his seizures and fatigue. (R. 792).

The ALJ gave Dr. Vyas' opinion little weight. (R. 17). The ALJ noted that Mr. Ronk had

x-rays that were unremarkable, and that a neurology report showed normal nerve conduction. (R. 17). The ALJ also noted that Dr. Vyas failed to define low stress, and that Dr. Vyas does not have any medical background in determining mental conditions, and therefore his opinion as to Mr. Ronk's mental conditions was "not accepted." (R. 17). Mr. Ronk argues that the ALJ erred in cherry picking the evidence and ignored treatment notes that supported his opinion. Mr. Ronk also argues that the ALJ failed to offer any substantial evidence inconsistent with Dr. Vyas' opinions. Finally, Mr. Ronk argues that the ALJ failed to consider the relevant factors in 20 C.F.R. § 404.1527(c)(2)-(6) in analyzing Dr. Vyas' opinion.

While the Court recognizes that the ALJ need not discuss every piece of evidence in the record when rendering her decision, the ALJ must not "cherry-pick" evidence supporting a finding of non-disability while ignoring evidence that points to the contrary. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). This is precisely what the ALJ did here. The ALJ acknowledged an MRI that showed mild degenerative changes at the L5-S1 with mild mass effect suspected on the right side exiting nerve root. (R. 17, 744). However, the ALJ found that an "unremarkable" x-ray from 2017 was more reliable than the MRI. (R. 17). This finding is flawed for several reasons.

The 2017 x-ray was not entirely unremarkable as the ALJ asserts, as it showed minimal disc bulges and mild subarticular recess narrowing, as well as mild facet arthropathy. (R. 742, 1056). Moreover, MRIs are more sensitive than x-rays, as they show abnormalities in the soft tissues and disc spaces, whereas x-rays primarily show abnormalities in the bones.[1] MRIs are more effective than x-rays for identifying bulging or herniated discs.[2] The MRI also showed

---

[1] https://www.mycdi.com/blog/whats-the-difference-between-an-mri-and-a-ct/ (visited May 5, 2020); https://www.healthline.com/health/ct-scan-vs-mri (visited May 5, 2020); https://orthoinfo.aaos.org/en/treatment/x-rays-ct-scans-and-mris/ (visited May 5, 2020).
[2] https://www.spineuniverse.com/conditions/degenerative-disc/exams-tests-degenerative-disc-disease (visited May

more than just mild degenerative changes at L5-S1. It also showed mild to moderate degenerative changes, hypertrophy of facet joints, radiculopathy, and apparent displacement of the nerve root at L5-S1. (R. 593-94). The ALJ discounted Dr. Vyas' opinion due to a treatment note that found mild to moderate changes in the lumbar spine with no significant narrowing of the disc space. (R. 17). The ALJ failed to mention that the very same treatment note states that Mr. Ronk showed more marked degenerative changes at L4-L5 and L5-S1. (R. 799). This treatment note was based on a 2016 x-ray, and Dr. Vyas noted that Mr. Ronk may need an MRI in the future if his symptoms persist. (R. 798-99). The treatment note also showed a history of injections for pain relief. (R. 798-800). The ALJ ignored large portions of the objective evidence that supported Dr. Vyas' opinions and instead chose portions of those reports that supported his ultimate conclusion of no disability. The ALJ failed to build a logical bridge from the evidence to the conclusion.

Moreover, the examination notes from multiple treating and examining physicians, including Dr. Vyas, supported his opinion. The ALJ cited to pieces of evidence that supported his decision to give Dr. Vyas' opinion little weight. The ALJ noted only the evidence that showed mild to moderate changes in his lumbar spine and normal nerve conduction. (R. 17). However, the ALJ ignored evidence that supported Dr. Vyas' opinion. Treatment notes indicated a guarded and abnormal gait requiring a cane to walk, an inability to walk on his heels and toes, tenderness in his cervical and lumbar paraspinal muscles and lumbar spine, tenderness in his left inguinal ligament and bilateral adductor longus and iliopsoas muscles, obvious left knee deformity, positive pronator drift in both arms, impaired motor skills with both hands during neurocognitive testing, positive straight leg raise tests on the left, reduced grip strength and

8, 2020)

reduced strength in his neck, deltoids, left iliopsoas, bilateral quadriceps, and in all lower extremity major muscle groups, reduced reflexes in both ankles, and absent reflexes in both knees. (R. 501, 507, 513, 526, 613-15, 617, 627-28, 680-81, 752-55, 764-65, 783, 796-98, 804-05, 812-13, 820-21, 827-28, 843-44, 860-62). The ALJ impermissibly cherry-picked evidence in his decision by ignoring the evidence listed above. For instance, the ALJ made note of negative straight leg raise tests, but he failed to mention the positive tests. (R. 17-19). Such cherry picking requires remand. The Court cannot determine whether the ALJ properly analyzed Dr. Vyas' opinion when he fails to properly discuss conflicting evidence.

### B. Subjective Symptoms

Mr. Ronk also asserts that the ALJ erred in the subjective symptom analysis. An ALJ's subjective symptom analysis is given special deference so long as the ALJ explains his reasoning and it is supported by the record. The Court will not overturn an ALJ's subjective symptom analysis unless it is "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (internal quotations omitted); *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015). The claimant bears the burden of demonstrating that an ALJ's subjective symptom evaluation is patently wrong. *See Horr v. Berryhill*, 743 F. App'x 16, 19-20 (7th Cir. 2018). The regulations require the ALJ to look at a variety of factors in evaluating a claimant's symptoms, including the nature and intensity of pain, the effects of his pain on his ability to function, and daily activities. 20 C.F.R. § 404.1529(c).

The ALJ found that Mr. Ronk's subjective symptoms were not supported by the objective medical findings. The ALJ noted that Mr. Ronk's symptoms improved or stabilized with treatment, only required conservative treatment measures, and that he retained the capacity to complete basic work-related activities. (R. 20-21). The ALJ also stated Mr. Ronk's migraines

and hallucinations were not supported by the objective evidence in the medical record, and that his cane was never prescribed to him. (R. 20). The ALJ also found that there was a discrepancy between Mr. Ronk's indication that he reads for fun and his testimony, where he stated he had no interest in reading. (R. 20).

  Mr. Ronk first takes issue with the ALJ's finding that although Mr. Ronk required a cane to walk, the cane was not prescribed. A claimant does not need a prescription for a cane, and the fact that a claimant does not have a prescription does not eliminate the fact that a claimant may require the use of a cane. *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("Absurdly, the administrative law judge thought it suspicious that the plaintiff uses a cane, when a physician had not prescribed a cane. A cane does not require a prescription…") Mr. Ronk's medical record repeatedly shows his need for a cane to ambulate. He frequently had abnormal gait and was noted to use a cane. (R. 501, 513, 526, 532, 563, 567, 615, 629, 627-28, 680, 753, 775, 778, 780, 783, 804, 812, 820, 843-44, 861). The ALJ impermissibly relied on the lack of prescription to discount Mr. Ronk's need for a cane and difficulty with ambulation.

  The ALJ also failed to discuss a number of the factors in 20 C.F.R. § 404.1529(c) when discussing Mr. Ronk's subjective symptoms. The ALJ failed to explicitly discuss the medical evidence and what symptoms that evidence discredited. Instead, the ALJ relied on minor symptoms (migraines and hallucinations) and ignored the possibly work-precluding symptoms (back pain and difficulty ambulating). The ALJ notes that Mr. Ronk's symptoms were relieved by conservative treatment, but he offers no insight as to what treatments, conservative or otherwise, relieved any of Mr. Ronk's symptoms. The ALJ also notes that Mr. Ronk claimed to enjoy reading in a function report yet testified that he never reads for fun at the hearing. However, the ALJ fails to explain how this information discredited any specific subjective

symptoms. The ALJ's subjective symptom analysis lacks any real analysis or discussion of either Mr. Ronk's symptoms or what evidence in the record contradicted those symptoms. On remand, the ALJ should provide a full analysis of Mr. Ronk's subjective symptoms.

The ALJ improperly weighed the opinion of treating neurosurgeon Dr. Vyas and erred in the subjective symptom analysis. On remand, the ALJ must properly weigh the evidence and make a full and proper analysis of Mr. Ronk's subjective symptoms. Accordingly, the Court reverses and remands for additional proceedings. The parties are free to address any remaining issues on remand.

## CONCLUSION

For those reasons, the Court REVERSES the Commissioner's decision and REMANDS for additional proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED:   May 15, 2020

>              /s/ JON E. DEGUILIO
> Judge
> United States District Court